UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

R.E.A. (XXX-XX-7360)                                CIVIL ACTION NO. 17-cv-0968

VERSUS                                              CHIEF JUDGE HICKS

NANCY A. BERRYHILL                                  MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

R.E.A. ("Plaintiff") was born April 9, 1957, so he is now 62 years old. He has an IQ of 57 and limitations stemming from poor ability to maintain attention or engage in social interactions, mental health issues, and back pain. Counsel reports that Plaintiff is receiving SSI benefits based on a finding that he is currently disabled. This proceeding stems from an application for children's SSDI benefits, a separate program, for which Plaintiff may be eligible based on his late father's social security record. To prevail on the claim, Plaintiff must be able to show, among other things, that he was under a disability prior to attaining age 22.

An ALJ conducted a hearing and issued a written decision that denied the claim. She reasoned that there were no medical or educational records supportive of any impairment prior to age 22, and she denied the claim on that ground. Tr. 11-14. The Appeals Council denied a request for review (Tr. 1-3), making the ALJ's ruling the Commissioner's final decision. Plaintiff then filed this civil action seeking judicial review pursuant to 42 USC § 405(g). For the reasons that follow, it is recommended that the

Commissioner's decision be reversed and this case be remanded to the agency for further proceedings.

**Child's Insurance Benefits**

The Social Security Act affords a number of benefit programs for children. The claim at issue in this case is for benefits under a program that provides benefits to disabled, dependent children of wage earners, when the wage earners are entitled to old-age or disability benefits or have died. The program provides a source of income to children most likely to have relied on the deceased, disabled, or retired wage earner for support. The child of the wage earner can receive benefits at any age, so long as the child became disabled before age 22 and has remained disabled since. Bloch on Social Security, § 2:3.

Plaintiff lived near his father, who looked after Plaintiff. The father died a few years before the current application was filed, and there is evidence to suggest that he was receiving social security retirement benefits before he died. An adult such as Plaintiff is entitled to child's benefits on the earnings record of an insured person who is entitled to old-age benefits or who has died if the applicant is unmarried, is the insured person's dependent child as defined in the regulations, and "you are 18 years old or older and have a disability that began before you became 22 years old." 20 CFR § 404.350; 42 USC § 402(d). Plaintiff asserts the onset of disability by April 8, 1979, which was the day before he attained age 22.

**Relevant Evidence**

Plaintiff was represented by counsel at his hearing. Counsel reported that she subpoenaed multiple schools but had not been able to obtain any records; they had either

been purged or lost. Plaintiff was asked his highest level of education, and he replied, "think the ninth." (Current counsel represents in his brief that Plaintiff dropped out after the third week of the 9th grade.) Plaintiff never earned a GED or attended any other kind of school. He said he had a "problem understanding" in school and "never learned to read." He cannot write a check, but he is able to call a phone number and provide his debit card number to pay a bill.

Plaintiff lived in a trailer near his father until his father passed away a few years earlier. His mother had died many years before. Plaintiff's cousin and the cousin's family now live with Plaintiff. They help him review his mail and attend to his affairs. Plaintiff said he had not held a job in maybe 15 years, although he had worked for a couple of months helping a plumber five or six years before. His earnings records show that he never engaged in enough work to qualify as substantial gainful activity under the social security regulations. Plaintiff said that he was being treated and given medication for nerves and anxiety. Tr. 48-61.

Jean Bell, Plaintiff's aunt, testified at the hearing that she recalled Plaintiff going to a mental health clinic in Shreveport. She called to get information about the visits, but the clinic said they no longer had the records. She said she knew that Plaintiff "took Ritalin through all his life." She said she "went to the school board to get some records and everything that we saw there was nothing but failing grades, and--but they kept passing him anyway." She recalled that his report card for the seventh grade had all F's, maybe a

couple of D's and that Plaintiff "does not read or write" and "just never could learn." She said, "This has been from childhood on." Tr. 62-67.[1]

Dr. Susan Tucker, Ph.D., a clinical psychologist, performed a consultative examination of Plaintiff in November 2016. Plaintiff was accompanied by a friend to the examination. Dr. Tucker reported that Plaintiff received special education services in school but dropped out in the 9th grade. His gait was unsteady due to a bad back (on which he had surgery), his fine motor skills were impaired due to involuntary movements with his hands, and his behavior was childlike. Plaintiff's speech was 80% comprehensible with moderate articulation errors. He seemed to rely on his friend for some of his history, and he had poor sustained concentration and short-term memory during the assessment. He could not read and had difficulty comprehending about 50% of Dr. Tucker's instructions.

Dr. Tucker administered a Wechsler Intelligence Test. Plaintiff had a Full Scale IQ of 57, which is in the 0.2 percentile of people his age and falls within the mild mental disability range of intellectual functioning. Dr. Tucker concluded that Plaintiff has marginal ability for understanding and following through with simple repeated instructions, and he would have poor ability to maintain attention and perform simple work tasks for a two-hour block. He would also have difficulty with peers in a work setting given his minimal level of social interactions and problems handling the stress and pressure

---

[1] Plaintiff's counsel located his client's 7th and 8th grade report cards after this appeal was filed. His final marks in the 7th grade were four D's and one F. The 8th grade marks reflect final grades of two D's and an F, and it appears that Plaintiff attended school for only half a day during much of his 8th grade experience. Doc. 15.

of a work setting. Tr. 324-30. Her report did not speak to Plaintiff's condition before age 22, and there is no indication that the agency asked her to opine on that critical issue.

**Standard of Review; Substantial Evidence**

This court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).

**Analysis**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations for assessing adult disability. Only the first three steps are relevant here. They ask the ALJ to determine whether (1) the claimant is engaged in work that amounts to substantial gainful activity; (2) the claimant has a severe impairment; and (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations. 20 CFR § 404.1520. The claimant bears the burden of showing he is disabled on all three of those steps of the analysis. Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity. His lifetime of reported earnings is less than $14,000, based primarily on efforts to work in 2001 and 2002. Tr. 142.

The ALJ then turned to step two, which asks whether the applicant has a severe impairment. 20 CFR § 404.1520(c). The Fifth Circuit holds that an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). "This second step requires the claimant to make a *de minimis* showing." Salmond v. Berryhill, 892 F.3d 812, 817 (5th Cir. 2018) (reversing a denial made at step two).

The ALJ reviewed Dr. Tucker's report. She acknowledged that Dr. Tucker observed Plaintiff to have cognitive, concentration, and memory deficits, and that Plaintiff appeared childlike, but she said that Dr. Tucker did not offer an opinion as to whether the claimant's impairments existed prior to the age of 22. She noted Ms. Bell's testimony that Plaintiff made terrible grades and could not read or write, but the ALJ pointed out that there were no medical or educational records supportive of any impairment prior to the claimant reaching the age of 22. The ALJ stated that Plaintiff had once alleged an onset date of 2003, several years after he turned 22, but Plaintiff's counsel explains that his client completed that form without assistance and made an obvious mistake. The ALJ concluded that the evidence did not establish a medically determinable diagnosis to demonstrate an impairment. The valid IQ test scores and Dr. Tucker's opinion were considered to show only Plaintiff's current performance. Accordingly, the ALJ ended the analysis at step two. Tr. 13-14.

Plaintiff (1) challenges the ALJ's decision at step two and (2) contends that he should be found disabled at step three because his intellectual disorder meets the requirements of Listing 12.05. That listing was once titled as providing rules for assessing "mental retardation," but it was recently revised to address "intellectual disorder." The old listing had some ambiguities that were addressed in cases such as <u>Randall v. Astrue</u>, 570 F.3d 651 (5th Cir. 2009). The new version appears to clarify some of those issues. It was effective January 17, 2017 and applies "to claims that are pending on or after the effective date of the rules." <u>See</u> Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732 (9/26/2016) (eff. 1/17/2017). The ALJ issued her decision in March 2017, and the Appeals Council denied review in May 2017.

Plaintiff invokes the part of the listing that relies most on IQ scores. That is now found in Listing 12.05(B), which provides as follows:

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) **IQ score of 70 or below** on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. **Significant deficits in adaptive functioning** currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

   d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that **the disorder began prior to your attainment of age 22**.

It is noteworthy that this listing requires that the intellectual disorder "began prior to your attainment of age 22." The child program, somewhat coincidentally, requires a showing that the claimant "have a disability that began before you became 22 years old." That element of the listing was also included in the prior version, and case law has developed regarding its application. The logic of the jurisprudence on the step-three listing issue is applicable to the ALJ's step-two decision that Plaintiff did not present adequate proof of a severe impairment that manifested before age 22.

There is a substantial body of case law that recognizes a presumption that IQ scores remain stable over time and that a claimant need not present results of testing conducted prior to age 22 in order to establish impairment before age 22. The leading case is Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001), in which the claimant was 49 years old, had a 7th grade education and an IQ of 72, but none of her school transcripts or similar records could be located; they were most likely lost in a fire. The ALJ denied the claim because of the lack of evidence revealing intellectual deficits that manifested before age 22. The appellate court held that, absent evidence of sudden trauma that could cause mental retardation, the IQ tests created a rebuttable presumption of a fairly constant IQ throughout the claimant's life. The ALJ's failure to make that presumption was error that resulted in reversal and remand.

The Fifth Circuit has acknowledged that "several circuits presume that an impairment was 'initially manifested during the developmental period' if the claimant

establishes the requisite impairment in the present." Randall, 570 F.3d at 656 n.8, citing Hodges and Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985) (assuming, in the absence of evidence of change in intellectual functioning, that claimant had approximately the same IQ in 1979 as indicated by a 1982 IQ test), but noting contrary authority in Markle v. Barnhart, 324 F.3d 182, 188 (3rd Cir. 2003).  See also Talavera v. Astrue, 697 F.3d 145, 152 (2d Cir. 2012) ("We agree with the majority of our sister Circuits that it is reasonable to presume, in the absence of evidence indicating otherwise, that claimants will experience a 'fairly constant IQ throughout [their] li[ves].'"); Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); and Guzman v. Bowen, 801 F.2d 273, 275 (7th Cir. 1986) (adopting presumption that low I.Q. existed prior to first I.Q. test).  The Fifth Circuit stated in Randall that it "need not opine on this issue" in that case.[2]

Even in Markle, which declined to apply a legal presumption, the Third Circuit found the evidence potentially supported the 48 year-old claimant who had an IQ of 70, dropped out of special education after 9th grade, and had not held a job in more than 15 years. His work before then was limited to some painting, cutting grass, and the like, and there was no evidence of traumatic event that might have induced mental retardation at a

---

[2] A treatise has provided a circuit-by-circuit roundup of the law on this issue.  Social Security Disability Law & Procedure in Federal Court § 5:43: Duration of Mental Retardation ("Mental retardation is a lifelong condition, one that usually begins at birth," and "[a] decrease in intellectual functioning after age 18 is classified as dementia, not retardation.")

later stage of life. Thus, the evidence suggested that his "mental condition remained constant from childhood through the present, the only change being that his physical condition worsened as the years went by." Markle, 324 F.3d at 189. The same is true in this case.

Some district courts within the circuit have applied the presumption. Two examples are Romero v. Astrue, 2009 WL 1928961, *3 (W.D. La. 2009) (Trimble, J.) and Blanks v. Colvin, 2015 WL 2240740, *7-8 (S.D. Tex.) (Ellison, J.). Both Judge Trimble and Judge Ellison found that the presumption was consistent with the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.). They each reversed and remanded in similar cases that involved adults with low IQ scores but an absence of ancient school or medical records to establish that the condition existed in childhood.

Social Security Ruling 83-20 was invoked to afford relief in Martin v. Commissioner, 2014 WL 1048150 (E.D. Mich. 2014), where the claimant reached age 22 in 1979 and the ALJ focused on the lack of records from before that time. There was evidence the claimant had been psychologically disturbed since high school, and there were two psychiatric evaluations from 1986, but there was no objective evidence produced prior to 1979. The court faulted the ALJ for not complying with Social Security Ruling 83-20, which it found particularly applicable when (as in this case) the claimant has already been found disabled under another title of the Social Security Act. The Ruling provides that when assessing the onset date of disabilities caused by non-traumatic origin, the ALJ should consider the claimant's allegations, work history, and other evidence. The ruling states that the ALJ "should call on the services of a medical advisor" when it is possible to

reasonably infer that the onset occurred sometime prior to the date of the first recorded medical examination. The Martin court reversed and remanded because the ALJ focused solely on the absence of contemporaneous medical records produced prior to age 22 and did not comply with Ruling 83-20 by obtaining additional information to make the onset determination.[3] Martin cited in support Spellman v. Shalala, 1 F.3d 357, 363 (5th Cir. 1993), which applied SSR 83-20 to reverse and direct consultation of a medical advisor when the onset date of a mental condition was ambiguous.

Ruling 83-20 was also invoked in Timmons v. Commissioner, 2013 WL 3480704 (S.D. Tex. 2013). The claimant had a history of schizophrenia, offered lay testimony that it existed since adolescence, and he was awarded SSI in 1993 based on the mental condition. But the ALJ denied a claim for child benefits based on the claimant's late father's record because there were no records from before his 22nd birthday in 1988. The court found that the ALJ failed to develop the record, reversed and directed consultation of a medical advisor to assist in making an informed decision about the onset date.

The ALJ in this case ended her analysis at step two, finding that Plaintiff did not demonstrate a severe impairment. Salmon reminds us that this is a *de minimis* requirement; an impairment is severe unless it is just a slight abnormality with such minimal effect that

---

[3] SSR 83-20 has been replaced in this respect by SSR 18-1p, effective October 2, 2018. The new ruling is similar and states that "non-traumatic impairments may be static impairments that we do not expect to change in severity over an extended period, such as intellectual disability." The ruling instructs the agency to consider evidence from other non-medical sources such as family, friends, or former employers, if it cannot obtain additional medical evidence "or it does not exist (e.g., the evidence was never created or was destroyed) . . .." It adds that the ALJ may call on the services of a medical expert by soliciting testimony or requesting responses to written interrogatories on the issue.

it would not be expected to interfere with an individual's ability to work. Id. 892 F.3d at 817. The undersigned finds persuasive the presumption afforded by Hodges and similar cases that the current valid IQ test creates a rebuttable presumption of a fairly constant IQ throughout the claimant's life. Plaintiff has an IQ of 57 and considerable evidence to suggest a lifelong intellectual disability. There is nothing in the record to suggest trauma, illness, or some other cause that could have brought on this condition after Plaintiff reached age 22. And Plaintiff does not have a work history that suggests he had a greater degree of mental ability in his younger days. An IQ of 57 would be expected to interfere with a person's ability to work, meaning it is a severe impairment. The mere lack of specific records from Plaintiff's childhood is not enough to discount the above evidence. Accordingly, the Commissioner's decision at step two is not supported by substantial evidence and should be reversed.[4]

Plaintiff argues that the court should find he is disabled at step three because he meets Listing 12.05. It is premature to assess that contention. It is the role of the agency to address claims in the first instance, and the court conducts only limited review of that decision. The Commissioner did not reach step three in the prior proceedings, so neither should this court. The more appropriate course is to reverse and remand to allow application of the presumption and consideration of any other evidence, such as the newly

---

[4] The provision of Section 405(g) on which reversal is based has procedural relevance to future proceedings. The relief recommended here is pursuant to sentence four of the statute, which provides: "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

discovered report cards, and the opinion of a medical expert on whether Plaintiff's mental disability manifested before or after age 22. The Commissioner can then make a new step two determination, and, if appropriate, proceed to the remaining steps in the analysis. An immediate award is appropriate only in rare circumstances where the claimant shows definitively that he is entitled to benefits. Lewis v. Commissioner, 2012 WL 7170419, *2 (W.D. La. 2012) (Hornsby, M.J.), adopted, 2013 WL 638887 (W.D. La. 2013) (Foote, J.). This is not such a case.

Accordingly,

It is recommended that, pursuant to sentence four of 42 USC § 405(g), the Commissioner's decision to deny benefits be reversed and that this matter be remanded to the agency for further proceedings.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar

that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of February, 2019.

Mark L. Hornsby
U.S. Magistrate Judge